**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-18-00047-TUC-JGZ |
| Plaintiffs, | **ORDER** |
| v. | |
| Ryan Zinke, et al., | |
| Defendants. | |

Plaintiffs have filed the instant action pursuant to the Endangered Species Act (ESA), 16 U.S.C. § 1531 *et. seq.*, and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, to challenge the November 2017 Final Mexican Wolf Recovery Plan (Plan) issued by the U.S. Fish and Wildlife Service (USFWS). (Doc. 1.) Plaintiffs allege the Plan violates the ESA because it does not rely on the best available science; does not set goals that would conserve the species; and lacks objective and measurable criteria that lead to recovery. (*Id.* at ¶¶ 74-76.) Plaintiffs seek declaratory judgment that the Plan violates the ESA. (*Id.* at ¶ A.) They also request that the Court remand the Plan to Defendants and enter an injunction requiring Defendants to develop a lawful recovery plan. (*Id.* at ¶¶ B, C)

Now pending before the Court is a Motion to Intervene in Support of Defendants (Doc. 25) and Memorandum in Support of Motion to Intervene (Doc. 25-1) filed by the New Mexico Department of Game and Fish (Department). The Department seeks to intervene as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure.

Alternatively, the Department seeks permissive intervention under Rule 24(b)(1)(B), "to defend the validity and adequacy of the . . . Plan."[1] (Doc. 25-1 at 14.). Plaintiffs and Defendants take no position on the Department's Motion. (Docs. 26, 27.) For the following reasons, the Court will grant the Department's Motion.

## Background

Historically, the Mexican wolf inhabited areas in southern Arizona, New Mexico, and parts of northern Mexico. (Doc. 25-1 at 1 (citing 80 Fed. Reg. 2488, 2489 (Jan. 16, 2015).) In the United States, the Mexican wolf preys primarily on elk, deer, and other ungulate species. (*Id.* at 2 (citing 80 Fed. Reg. at 2492).) "As of 2015, roughly half of all of the Mexican wolves in the wild were found in New Mexico." (Doc. 25-1 at 5 (citing N.M. Dep't of Game and Fish Wildlife Mgmt. and Fisheries Mgmt. Div., *Threatened and Endangered Species of New Mexico,* 11 (Oct. 5, 2016).)

In support of its Motion, the Department submits the Declaration of Alexandra Sandoval, the Department's Director since 2014 and an employee of the Department since 1994. (Doc. 25-2 at ¶¶ 2, 4.) As Director of the Department, Sandoval also serves as Secretary to the New Mexico State Game Commission. (*Id.* at ¶ 3.) Sandoval states that the Department has been contributing time and funds to the wolf recovery effort since the latter part of 1998. (*Id.* at ¶ 7.) "The various wolf-focused projects have cost in excess of $1.2 million dollars since that time. This amount includes salaries for personnel working on wolf issues, helicopter rentals to assist in capture and collaring of wolves, and hiring horses to translocate wolves in wilderness areas." (*Id.* at ¶ 9.) Although the Department withdrew from recovery program in 2011, "the Department continued to have employees working on the rule issued by USFWS in January 2015 that revised the experimental population areas, as well as some of the regulations guiding the management of the experimental population ([]10(j) Rule[])." (*Id.* at ¶ 11; *see also* Doc. 25-1 at 4.) Additionally, Department employees assisted in preparing the environmental

---

[1]The Department has attached a proposed Answer to its motion. *See* Fed. R. Civ. P. 24(c) (requiring that the motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").

impact statement associated with the 10(j) Rule from 2013-2015. (*Id.*)

Three Department employees also worked with the USFWS to help develop the Plan at issue in this action. (*Id.* at ¶ 12.) "The Department has aided in providing the science necessary for developing the recovery plan, including authoring and peer reviewing studies and articles on the Mexican wolf, and permitting the capture, relocation and release of wolves on New Mexico Land." (*Id.* at ¶ 13.) Law enforcement officers from the Department have also pursued and assisted other agencies in pursuing criminal charges for the illegal killing of Mexican wolves. (*Id.*)

In December 2017, the New Mexico State Game Commission (Commission) voted to approve the Plan. (*Id.* at ¶ 14.) The Commission also voted "to allow all the wolf pups that USFWS originally sought to cross-foster in Arizona or New Mexico, to be placed in New Mexico if it was in the best interest of the species." (*Id.* at ¶ 15.) The Department has also supported the Plan by working with USFWS to allow for introduction of pups and issuing permits for moving problem wolves in and out of New Mexico, as well as issuing other permits required to manage the wild population. (*Id.* at ¶ 16.)

Sandoval stresses that "[t]he management of the Mexican wolf does not occur in a vacuum." (*Id.* at ¶ 18.) The Department must manage the wolf population "in conjunction with the ungulate population that constitute the wolf's prey base to ensure the health of both populations." (*Id.*) Further, "[u]ngulate populations must also be sustainably managed to allow for recreational harvest opportunities for hunters, which provide an important revenue stream to the Department." (*Id.*) "Funds from hunting and fishing licenses are, in turn, used in part to support conservation activities, including habitat restoration and habitat management, for a variety of species, including the Mexican wolf." (*Id.*)

According to Sandoval, "decisions relating to recreational harvest opportunities in the wolf habitat, as well as other ungulate population management measures, are impacted by the [P]lan." (*Id.* at ¶ 19.) Thus, "[t]he Department's ability to manage its

properties and wildlife is greatly impacted by the . . . [P]lan." (*Id.*)

**Discussion**

**Intervention as of right**

Rule 24 of the Federal Rules of Civil Procedure is construed broadly in favor of intervention. *Donnelly v. Glickman,* 159 F.3d 405, 409 (9th Cir. 1998). An applicant seeking to intervene as a matter of right under Rule 24(a)(2) must satisfy the following four-part test:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.,* 606 F.3d 1142, 1148 (9th Cir. 2010) (citation omitted). Here, the Department has demonstrated that it satisfies all four parts of this test.

First, the Department's motion to intervene is timely made. An applicant seeking to intervene "must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *United States v. Oregon,* 913 F.3d 576, 589 (9th Cir. 1990) (internal quotation marks and citation omitted). This case is at an early stage and briefing on Defendants' pending motion to dismiss has not closed.

Second, the Department has "a significantly protectable interest" in this action. This requirement is satisfied when "the interest [asserted] is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue." *Northwest Forest Res. Council v. Glickman,* 82 F.3d 825, 837 (9th Cir. 1996) (internal quotation marks and citation omitted). "The 'interest' test is not a bright-line rule. An applicant seeking to intervene need not show that the interest he asserts is one that is protected by statute under which litigation is brought. It is enough that the interest is protectable under any statute." *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004) (internal quotation marks and citations omitted). As steward of New

Mexico's fish and wildfire resources, the Department has an interest in the state's wildlife and in the management of the endangered species within its borders, including the Mexican wolf. *See* N.M. Stat. Ann. §§ 17-1-1, 17-1-5, 17-1-14. The Department's ability to manage land that the Mexican wolf and its prey occupy or may occupy is impacted by the Plan. (Doc. 25-2 at ¶ 19.) "All of the land south of Interstate 40 in New Mexico is designated as Mexican wolf habitat. As such, the ultimate fate of the Plan, and thus the resolution of this case, will greatly impact the state." (Doc. 25-1 at 8.)

Additionally, the Department has played an active role in the conservation of the Mexican wolf for decades, and most recently assisted with "providing the science necessary for developing the . . . [P]lan" at issue here. (Doc. 25-2 at ¶ 13.) The parties have not disputed the Department's assertion that the Court's ruling in this matter will impact the Department's ability to manage the Mexican wolf population in conjunction with the ungulate population that constitute the wolf's prey. (Doc. 25-2 at ¶ 18.) This, in turn, will affect hunting opportunities in New Mexico which impacts the Department's revenue stream as well as funding for conservation efforts for the Mexican wolf and other species. (*Id.*) Based on the foregoing, the Department has demonstrated a legally protected interest related to this action. *See e.g. Center for Biological Diversity v. Jewell,* No. 1:16-CV-01932-MSK-STV, 2017 WL 4334069, *2 (D. Colo. Mar 24, 2017) (concluding the Department demonstrated a protectable interest where a second review, if ordered, would require the expenditure of additional funds and the court's ruling could also jeopardize the Department's current restoration projects); *Western Watersheds Project v. United States Fish & Wildlife Serv.,* No. 4:CV 10-10-229-BLW, 2011 WL 2690430, *3 (D. Idaho July 9, 2011) (prospective state intervenors had a protectable interest in the underlying litigation when plaintiff's requested relief may have required the state intervenors to modify or extend certain conservation efforts with respect to the subject species).

Third, the Court finds that the disposition of the above-captioned action will, as a practical matter, impair or impede the Department's ability to protect its interests. "'If an

absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .'" *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment). Here, "[i]f Plaintiffs prevail, the Plan would cease to guide the Department in making management decisions about not only the Mexican wolves, but also ungulate populations, habitat restoration efforts, and other statewide conservation programs." (Doc. 25-1 at 10). Additionally, the Department's prior efforts to assist with development of the Plan would be undermined and the time spent on the Plan would have been fruitless. (*Id.*) The Department would have to expend more time and resources in developing a new plan which would take resources away from other statewide wildlife programs. *See e.g. County of San Miguel, Colo. v. MacDonald,* 244 F.R.D. 36 (D.D.C. 2007) (finding proposed intervenor's interests impaired where they would expend additional time and resources otherwise ordinarily devoted to their businesses if the court ordered re-initiation of a USFWS determination).

Finally, as to the fourth element, the Ninth Circuit considers three criteria to determine whether existing parties adequately represent the interests of the proposed intervenor: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary elements to the proceeding that other parties would neglect. *State of Cal. v. Tahoe Reg'l Planning Agency,* 792 F.2d 775, 778 (9th Cir. 1986). In sum, the proposed intervenor must "show[] that representation of his interest [by existing parties] 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972) (internal citations omitted). The Ninth Circuit has acknowledged that a federal agency, such as the Forest Service, "is 'required to represent a broader view than the more, narrow, parochial interests' . . ." of a proposed state intervenor. *Forest Conservation Council v. United States Forest Serv.,* 66

F.3d 1489, 1499 (9th Cir. 1995), *abrogated on other grounds by Wilderness Soc'y v. United States Forest Serv.,* 630 F.3d 1173 (9th Cir. 1995). Although Defendants and the Department generally seek the same outcome in this litigation, the interests of Defendants and the Department are not entirely alike. While Defendants have an interest in upholding their process, the Department has an interest in how that process affects New Mexico and the State's resources already expended on behalf of the Mexican wolf. (Doc. 25-1 at 12.) Moreover, even if USFWS "and the Department have the same goal in this litigation, there is no guarantee that [US]FWS will not change or adjust its policy or position during the course of litigation." (*Id.* at 12–13 (citing *WildEarth Guardians v. United States Forest Serv.,* 573 F.3d 992, 997 (10th Cir. 2009) (recognizing that a non-federal actor should not be required to rely on a federal agency to protect its interests, in part, because the agency could shift its policy positions during litigation)). Consequently, the Department has satisfied the requirements necessary for intervention of right pursuant to Fed. R. Civ. P. 24(a).

**Permissive intervention**

Alternatively, even if the Department did not satisfy the requirements to intervene as of right, the Department satisfies the requirements for permissive intervention. Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The Ninth Circuit has "often stated that permissive intervention requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (internal quotation marks and citation omitted). Additionally, [i]n exercising its discretion [to allow permissive intervention] the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As to the first element, where, as here, "the proposed intervenor in a federal-question case brings no new claims, the jurisdictional

concerns drops away." *Freedom from Religion Found.,* 644 F.3d at 844. Second, as discussed above, the Department's Motion is timely filed. As to the third element, the Department has demonstrated a common question of law and fact between its defense and the main action. Both the Department and Defendants seek to defend the validity and adequacy of the Plan. Defense of the Plan will require a showing, through the administrative record, that the Plan "is legally sufficient and supported by best the available science, and, therefore, not arbitrary and capricious or contrary to law." (Doc. 25-1 at 14.). Finally, the Department seeks only to file an Answer at this point, which will not unduly delay or prolong these proceedings. There is no suggestion that permitting the Department to intervene will prejudice the adjudication of Plaintiffs' or Defendants' rights. Consequently, the Department has also made the requisite showing for permissive intervention.

Accordingly,

IT IS ORDERED that the Motion to Intervene filed by the New Mexico Department of Game and Fish (Doc. 25) is GRANTED.

IT IS FURTHER ORERED that the New Mexico Department of Game and Fish shall have seven (7) days from the date that this Order is filed to file and serve its Answer.

Dated this 18th day of July, 2018.

Honorable Jennifer G. Zipps
United States District Judge